**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 12-cv-01420-MSK-MJW**

**SHANNON WAGNER,**

      Plaintiff,

**v.**

**AMERICAN FAMILY INSURANCE,**

      Defendant.

___

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
___

**THIS MATTER** comes before the Court pursuant to the Defendant's ("American Family") Motion for Summary Judgment **(# 24)**, Ms. Wagner's response **(# 32)**, and American Family's reply **(# 37)**; Ms. Wagner's Motion for Leave to File a Supplemental Brief **(# 42)** in support of her summary judgment response,[1] and American Family's response **(# 47)**; American Family's Motion for Partial Summary Judgment **(# 51)**, Ms. Wagner's response **(# 56)**, and American Family's reply **(# 63)**; and American Family's Objections **(# 72)** to an August 14, 2013 Minute Order **(# 71)** by the Magistrate Judge granting the Plaintiff's Motion to Compel **(# 55)**, and the Plaintiff's response **(# 75)**.

---

[1] The supplemental brief proffered by Ms. Wagner does not materially alter the analysis herein.

## FACTS

Ms. Wagner owns a home in Aurora, Colorado. That home is insured by American Family under a homeowner's policy. In or about April 2011, Ms. Wagner had Aurora Water examine her property to ascertain whether there was any leakage occurring. The Aurora Water representative informed Ms. Wagner that there was a leak, and it was likely in the slab under the home. Ms. Wagner subsequently retained the services of American Leak Detection, and its inspection revealed that a water pipe located underneath the concrete slab of the property near the exterior wall of the house was the source of the leak.

On May 31, 2011, Ms. Wagner gave notice to American Family of a claim for damage to the home.[2] An American Family adjuster inspected the home on June 2, 2011, and observed cracks in the slab and damage to the home's foundation. The parties seem to agree that water from the broken pipe eroded the soil underneath the home, causing settlement and cracking of the slab. This, in turn, caused additional damages inside the home, including cracked drywall and separating flooring panels. On June 15, 2011, American Family denied Ms. Wagner's claim, citing several allegedly applicable policy exclusions. The parties had subsequent discussions about Ms. Wagner's claims and American Family's justifications for denying it, but American Family did not waver from its conclusion that the damage was not covered.

Ms. Wagner's commenced this action against American Family, asserting four causes of action: (i) a claim seeking a declaration of her rights under the policy; (ii) a claim for breach of the insurance contract; (iii) a statutory claim under C.R.S. § 10-3-1116, in that American Family

---

[2] There is reference to Ms. Wagner's initial claim alleging "water damage to floor, dry wall, and ceiling," and a matter involving a "leak coming from a collapsed pipe in her upstairs," but these appear to be erroneous or unrelated matters. It appears to be undisputed that Ms. Wagner's home is a single story and has no "upstairs."

unreasonably delayed or denied the payment of benefits under the policy; and (iv) a clam that American Family's denial of the claim constitutes a bad faith breach of the insurance contract.

American Family moves **(# 24)** for summary judgment on all claims by Ms. Wager arguing, essentially, that Ms. Wagner's policy excludes coverage for the loss in several respects. Inexplicably, American Family then filed a second motion for summary judgment **(# 51)** on Ms. Wagner's first two claims for relief – declaratory judgment and breach of contract – arguing that Ms. Wagner failed to give timely notice of her claim to American Family under the terms of the contract.[3]

Separately, American Family has filed Objections **(# 72)** under Fed. R. Civ. P. 72(a) to a ruling by the Magistrate Judge requiring American Family to produce certain discovery materials and to allow a Rule 30(b)(6) deposition to be taken of its representative on certain topics.

## ANALYSIS

**A. Summary judgment motion**

1. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs

---

[3] Although neither Fed. R. Civ. P. 56 nor this Court's Local Rules place any particular limitation on when a party may file a motion for summary judgment, the Court notes that dispositive motion practice is not a means to raise issues *seriatim* as they might occur to a party. It is incumbent upon the parties to submit a motion for summary judgment when issues are ripe for determination. The Court assumes that a party's decision to file a dispositive motion before discovery is complete reflects the party's assessment that no further discovery is necessary. Here, the filing of two, separate, summary judgment motions by American Family is inconsistent with the purpose espoused by Fed. R. Civ. P. 1.

what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

2. <u>Standards governing interpretation of insurance policies</u>

When attempting to construe language in an insurance policy, the Court's ultimate goal is to ascertain and give effect to the reasonable expectations of the parties to the policy. *Pompa v. American Family Mut. Ins. Co.*, 520 F.3d 1139, 1143 (10th Cir. 2008). The strongest indication of the parties'' reasonable expectations is the policy language itself, and thus, the Court's first step is to give effect to the plain and ordinary meaning of its terms, as those terms would be understood by a person of ordinary intelligence. *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009), *citing Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 30 (Colo. 1996); *Pompa*, 520 F.3d at 1143.

Colorado applies the "reasonable expectations doctrine," requiring that the Court read the policy consistent with the understanding of "ordinary insured" would have of it. *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1048-51 (Colo. 2011). In other words, the Court construes the policy language not as the insurer intended it to mean, but according to what the ordinary reader and purchaser would have understood it to mean. *Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 496 (10th Cir. 1994). The same rules apply to provisions in insurance policies that exclude certain situations from otherwise available coverage; exclusionary terms must also be construed according to their plain and apparent meaning. *Worsham Contr. Co. v. Reliance Ins. Co.*, 687 P.2d 988, 990 (Colo. App. 1984). The

Court must not construe terms of a policy in isolation; it must consider the policy as a whole. *Simon v. Shelter General Ins. Co.*, 842 P.2d 236, 239 (Colo. 1992).

When terms in a policy are susceptible to more than one reasonable interpretation, the Court must construe the ambiguous term against the drafter – the insurer – and in a manner that would promote, rather than deny, coverage. *Blackhawk-Central City Sanitation Dist. v. American Guarantee & Liab. Ins. Co.*, 214 F.3d 1183, 1191 (10th Cir. 2000). However, a term is not ambiguous simply because the parties disagree as to its meaning, or where hypothetical or abstract sets of facts create the potential of ambiguity. *Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 513 (Colo. App. 1996).

      3. <u>Merits</u>

Here, it is Ms. Wagner's burden to establish a breach of the insurance contract by American Family's denial of her claim. Essentially, she must establish that her loss was covered by the insurance contract.

American Family contends that the contract does not provide coverage for Ms. Wagner's loss due to the application of four coverage exclusions: (i) the "earth movement" exclusion, (ii) the "water below the surface" exclusion, (iii) the "seepage" exclusion, (iii) the "settling" exclusion. Ms. Wagner concedes that at least two of these exclusions – the "earth movement" and "water below the surface" exceptions – are properly invoked by American Family (she disputes that the "seepage" and "settling" exclusions apply, however), but she contends that the "resulting loss" exception in the policy restores coverage that otherwise would be excluded.

The Court begins with the grant of coverage, found in a section of the policy entitled "Property Coverages – Section I." Coverage of the home itself is set forth in "Coverage A –

Dwelling" of this section. (Other subsections in the "Property Coverages" section include "Coverage B – Personal Property," and "Coverage C – Loss of Use"). There is no dispute between the parties that the loss suffered by Ms. Wagner fits within the initial grant of coverage.

The Court thus turns to another section of the policy, entitled "Exclusions – Section I." "Part A" of that subsection applies to all of the coverages set forth above, and operates to revoke coverage for "loss caused directly or indirectly by any of the following." Among those exclusions are:

• the "earth movement" exclusion – that is "any loss caused by, resulting from, [etc.] subsidence . . . earth sinking, rising, shifting, expanding, or contracting," and

• the "water below the surface" exclusion, which revokes coverage for loss caused by "water below the surface of the ground . . . includ[ing] water which . . . seeps or leaks through any part of a building or other structure."

The "resulting loss" exception, upon which Ms. Wagner relies, is found at the very end of the "Exclusions – Section I" section of the policy. It reads, "However, we do cover any resulting loss to property described in Coverage A- Dwelling . . . not excluded or excepted in this policy."

The parties dispute whether the "resulting loss" exception applies only to the exclusions found in Part C, or whether it applies to all of the exclusions found in Parts A, B, or C of the policy. This dispute is informed, in part, by the formatting of the document. The Court observes, without necessarily finding, that a plausible argument could be made that the formatting of the "resulting loss" language – which follows and is set at a left margin depth equal to the headings

and main body text of Parts A, B, and C[4] – suggests that it is not a subset of any particular Part but applies equally to all. Accordingly, for purposes of analysis, the Court will assume that the "resulting loss" exception could apply to the Part A exclusions that the parties agree are applicable.

Thus, the question presented is whether the "resulting loss" exception applies to restore coverage for Ms. Wagner's loss, notwithstanding the Part A "earth movement" and "water below the surface" exclusions. Applying the plain language of the exclusions and the exception, the Court concludes that it does not.

The exclusions in Part A, including the "earth movement" and "water below the surface" exclude coverage for any "loss caused **directly or indirectly**" by these events. In other words, it excludes coverage for losses **directly** caused by earth movement – *e.g.* the collapse of the entire dwelling caused by an earthquake – as well as losses **indirectly** caused by earth movement – *e.g.* damage to walls or joints caused by one side of the foundation sinking, which is in turn caused by earth movement.

It is undisputed that the losses claimed by Ms. Wagner – that is, damage to the drywall, flooring, and slab – were indirectly caused by the movement of the slab due to erosion of the soil beneath it, which resulted from the leaking pipe below the slab. Thus, the "earth movement" exclusion excludes coverage for the loss.

Unfortunately for Ms. Wagner, the "resulting loss" language does not restore coverage. The "resulting loss" exception "applies when an excluded peril causes a separate and

---

[4] The "Part C" subsection identifies certain exclusions that apply only to the "Coverage A- Dwelling" coverage, indicating that American Family does not cover losses resulting from "acts or decisions," "planning, construction, or maintenance," or "weather conditions."

independent covered peril[;] damages resulting from the covered peril is then covered under the resulting loss provision, while the damage resulting from the initial excluded peril remains uncovered." *See Vision One, LLC v. Philadelphia Indemnity Ins. Co.*, 241 P.3d 429, 437 (Wash.App. 2010), *rev'd on other grounds*, 276 P.3d 300 (Wash. 2012); *see also Continental Cas. Co. v. Landmark Hotels, LLC*, 184 Fed.Appx. 649, 650 (9th Cir. 2006) (unpublished). *Vision One* gives the following example:

> following the destruction caused by the 1906 San Francisco earthquake, gas-fed fires broke out and caused even more damage across the city. Most property insurance policies excluded earthquake damage but covered fire damage. Because an excluded peril (earthquake) caused an independent covered peril (fire), the resulting fire damage was covered as a 'resulting loss." But the earthquake damage remained uncovered.

*Id.*

Here, Ms. Wagner acknowledges that the soil erosion that caused the settling of the home's slab falls within the "earth movement" exception, but she does not identify any "covered peril" that caused the damage to the slab, drywall, floors, and ceilings for which she seeks coverage via the "resulting loss" provision. By all appearances from the record, there is no such covered peril. Rather, the record reflects a straightforward chain of events: water flowing from the leaking pipe caused the soil around the foundation and slab to erode, which, in turn, caused the slab to crack and settle resulting in interior damage. There simply is no evidence of a separate "resulting loss" in this case.

Ms. Wagner relies on *Kesling v. American Family Mut. Ins. Co.*, 861 F.Supp.2d 1274 (D.Colo. 2012). There, the homeowners experienced damage to a deck and adjacent areas in the home, which in turn allowed water to enter the home, resulting in water damage and mold

formation. The homeowner attributed the deck damage to defective design and construction. The homeowners made a claim under their American Family policy – a policy identical to the one here – and American Family denied that claim, finding that the losses were excluded under the "planning, construction, or maintenance" exclusion in Part C. The homeowners sued, claiming that the "resulting loss" exception nevertheless restored coverage for some of their losses. Judge Jackson of this Court concluded that the "resulting loss" provision was "reasonably susceptible to at least two meanings" – that it extended coverage for "damage to parts of the home other than the defective construction resulting from water or moisture infiltration resulting from the defective construction" or that it is "damage that is separate and independent from that which is directly caused by the defective construction." *Id.* at 1284. Resolving the ambiguity in a way that favored coverage – *i.e.* adopting the first construction – Judge Jackson concluded that the losses relating to water intrusion were arguably covered by the policy, such that American Family was not entitled to summary judgment in its favor.

Although that case involved an identical insurance policy and the question of whether the "resulting loss" clause restored coverage caused by an excluded peril, the outcome is not the same due to different facts. In *Kesling*, **a**n excluded peril caused a covered peril, which, in turn, gave rise to a loss. In such case, the "resulting loss" exception applies.

But that is not what happened here. The excluded peril – the earth movement beneath and around the slab -- is the sole identified cause of the loss.. There is no identification of a covered peril that resulted from the excluded peril. Had Ms. Wagner identified a covered peril that arose from the earth movement, arguably the result in *Kesling* might obtain.

*Kesling* is also distinguishable for a second reason. In *Kesling,* American Family asserted the "planning, construction, or maintenance" exclusion found in Part C of the Exclusions section of the policy. In contrast, here it invokes the "earth movement" exclusion found in Part A of the Exclusions section.

The two exclusion sections are drafted differently. As noted above, Part A exclusions (including the "earth movement"), preclude coverage for losses **arising "directly or indirectly"** from the covered peril. In contrast, Part C exclusions preclude coverage for **"loss caused by any"** of the excluded perils. One must presume that if the same meaning were intended, the same words would have been used. Thus, the Court infers that some different meaning was intended.

A reasonable interpretation of Part C is that it excludes only those losses **directly caused** by the Part C perils, while Part A excludes losses **directly or indirectly caused** by Part A perils. If interpreted in this manner, the "resulting loss" exception would restore coverage for a loss caused indirectly by a Part C peril – say, defective construction causes water intrusion -  but the same could not be said for a Part A loss because even indirect causation by an excluded peril results precludes coverage. Thus, the Court finds *Kesling* to be distinguishable from the case presented here.

Breach of the insurance policy by American Family is essential element in all of Ms. Wagner's claims. Ms. Wagner concedes that the "earth movement" exception properly applies to the loss she claims, but she has not shown facts that would suggest that those losses are nevertheless covered via the "resulting loss" exception. On this record, the Court finds that there was no breach of the contract because there was no coverage for Ms. Wagner's loss. Thus, the

11

Court grants summary judgment to American Family on all of the claims[5], rendering the remaining motions moot.

**IT IS THERFORE ORDERED** that American Family's Motion for Summary Judgment **(# 24)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of American Family on all claims in this action. Ms. Wagner's Motion for Leave to File a Supplemental Brief **(# 42)** in support of her summary judgment response, American Family's Motion for Partial Summary Judgment **(# 51)**, and American Family's Objections **(# 72)** are **DENIED AS MOOT**.

Dated this 22nd day of September, 2013.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge

---

[5] The Court need not address whether American Family's invocation of other policy exceptions was correct here. Ms. Wagner does not argue that those exceptions, even if improperly invoked by American Family, somehow restore coverage that the "earth movement" exclusion revokes.